Arthur E. SUMMERFIELD and Miriam W. Summerfield, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 1508.

United States District Court
E. D. Michigan, N. D.

Oct. 5, 1956.

John C. Evans, Frank H. Boyer, Detroit, Mich., Harry G. Gault, Flint, Mich., of counsel, for plaintiffs.

Charles K. Rice, Acting Asst. Atty. Gen., Andrew D. Sharpe, Homer R. Miller, Attorneys, Department of Justice, Washington, D. C., Frederick W. Kaess,

U. S. Atty., John L. Owen, Asst. U. S. Atty., Detroit, Mich., for defendant.

LEVIN, District Judge.

Plaintiffs bring this action to obtain a refund of Federal income tax and assessed interest paid by them in the aggregate amount of $183,895.11. The question presented is whether amounts received by Miriam W. Summerfield from Summerfield Chevrolet Company in connection with the purchase and redemption of her entire stock interest in the corporation should be taxed as long term capital gain or ordinary income.

Summerfield Chevrolet Company was incorporated under the laws of the State of Michigan on October 1, 1929. The company obtained a franchise from General Motors Corporation to sell Chevrolet automobiles, and there is evidence that Miriam W. Summerfield was instrumental in obtaining the franchise. On incorporation, one third of its stock was issued to Arthur E. Summerfield, husband of Miriam W. Summerfield, and the balance to two other stockholders, R. Spencer Bishop and Don Maginn, unrelated to the Summerfields.

Funds of Mrs. Summerfield from a joint savings account were used to pay for part of the original stock issued to her husband. Subsequently, additional stock, paid for entirely by Mr. Summerfield, was issued to him. On December 2, 1932, additional stock was issued in the joint names of Mr. and Mrs. Summerfield, and on December 8, 1933, a certificate was issued in their joint names for 250 shares to replace all of the stock theretofore registered in the name of Mr. Summerfield which was surrendered for cancellation. According to the unrefuted testimony of both Mr. and Mrs. Summerfield, the stock was placed in their joint names, pursuant to an agreement that such would be done at the first opportune time in consideration for Mrs. Summerfield's original contribution and her efforts to obtain the franchise.

On February 26, 1937, a certificate for 250 shares was issued in their joint names pursuant to a stock dividend in that amount, and on December 18, 1941, a certificate for 166⅔ shares was issued in their joint names to represent a further stock dividend. To summarize: from and after December 18, 1941, 666⅔ shares of the stock of the company was registered in the joint names of Mr. and Mrs. Summerfield.

The plaintiffs filed joint income tax returns for the years 1932 through 1935. Dividends declared by the company on the shares held by them were issued in their joint names and were reported in those returns. Mrs. Summerfield filed separate individual income tax returns during the years 1936 through 1947. With the exception of 1936 and 1937 one half of the dividends declared and paid by the company in those years on the stock issued in their joint names were reported by Mrs. Summerfield in her separate income tax returns. The entire amount of the 1936 and 1937 dividends was included in the separate returns for those years filed by Mr. Summerfield. Thereafter refund claims were filed by Mr. Summerfield, and in due course refunds were made by the Commissioner of Internal Revenue to Mr. Summerfield on the ground that it was error to have included in his return 100% of the income from the jointly owned stock as 50% thereof was taxable to Mrs. Summerfield.

Prior to 1941, the stock held by stockholders other than the Summerfields and Bishop had been redeemed by the company. Beginning in 1941, officials of the Chevrolet Motor Division of the General Motors Corporation advised Mr. Summerfield that it would be in the interest of division policy to redeem the stockholdings of the two inactive stockholders, Mrs. Summerfield and Bishop.

When Bishop died on October 27, 1946, Chevrolet officials insisted that Mr. Summerfield either purchase Bishop's shares from his estate or arrange for the Summerfield Chevrolet Company to redeem them. On October 10, 1947, the company redeemed all 250 shares of the stock outstanding in Bishop's name at the time of his death for $137,500 or $550 a share.

The book value of the company's outstanding stock on October 31, 1946, four days after Bishop's death, was $365 a share. On September 30, 1947, ten days prior to the purchase, the book value was $668 a share.

Following Bishop's death, Chevrolet officials again requested that the stock belonging to Miriam W. Summerfield be redeemed. Such a redemption was not appropriate at that time because a redemption of Mrs. Summerfield's stock at the same time as the purchase of the Bishop stock would have reduced the capital investment of the Summerfield Chevrolet Company below the requirements demanded by the Chevrolet Division. Mr. Summerfield did agree, however, to redeem Mrs. Summerfield's stock as soon as the company's financial status would permit.

On December 27, 1948, all of the certificates representing the stock issued in the names of Mr. and Mrs. Summerfield were surrendered to the company and on that date a certificate for 333⅓ shares was issued to Mrs. Summerfield. At the same time a certificate in like amount was issued to Mr. Summerfield.

On December 29, 1948, Mrs. Summerfield surrendered to the company the certificate issued in her name for 333⅓ shares and received from the company a check made payable to her order in the sum of $215,000, and an interest-bearing promissory note of the company for $225,000, all of which has been paid including interest of $59,831. The price on this basis was $1,320 a share.

The book value of the company's outstanding stock on December 31, 1948, after year-end accounting adjustments, was $1,325 for each share. At the time of the redemption, capital surplus was appreciated by $230,000 on the company's books. This was a bookkeeping device to raise the invested capital of the corporation sufficiently so that it could make the financial showing required by the Chevrolet Motor Division. The $440,000 paid Mrs. Summerfield was recorded on the books of the Summerfield Chevrolet Company as a reduction in capital and earned surplus.

Mr. and Mrs. Summerfield reported the income arising from the purchase of the stock on their joint 1948 income tax return as long term capital gain, pursuant to the provisions of Sections 115(c) and 115(i) of the Internal Revenue Code of 1939, 26 U.S.C. §§ 115(c, i). On audit the Bureau of Internal Revenue proposed deficiencies on the ground that the income realized from the redemption of the stock was not long term capital gain but ordinary income.

After negotiation deficiencies were calculated by treating $275,000 of the $440,000 payment as ordinary income and treating the balance as long term capital gain. Mr. and Mrs. Summerfield paid the deficiencies in the aggregate of $151,034.27, plus assessed interest of $32,960.84, with the express stipulation that such action was without prejudice to their right to file claims for refund and to institute the pending action. In due course, refund claims were filed, the statutory notice of disallowance was sent and this action instituted.

The taxpayers contend that the income realized by Mrs. Summerfield is to be taxed as a distribution in partial liquidation of the company and therefore a long term capital gain under the provisions of Sections 115(c) and 115(i) of the Internal Revenue Code of 1939 as an amount received in exchange for the stock.

The Government contends first that inasmuch as all of the stock was originally issued in the name of Mr. Summerfield and there was no evidence that Mrs. Summerfield paid for an entire 50% interest, there has been a failure to prove that Mrs. Summerfield actually owned the 50% interest transferred by her to the corporation in December 1948, and that all of the stock allegedly owned by her should be deemed owned by Mr. Summerfield or, in the alternative, she should be deemed the owner only of the stock purchased from funds belonging to her.

I take the view that it is of no consequence how Mrs. Summerfield acquired

her stock, whether by purchase or by gift, unless there was a question as to the genuineness of the documents. Here it has been stipulated that all of the stock was registered in their joint names since 1932 and 1933, and that Mrs. Summerfield received and reported as income her share of the dividends paid thereon. Clearly she was a co-owner of the stock that was registered in their joint names for fifteen or sixteen years. The severance of the joint tenancy on December 27, 1948, and the issuance of a stock certificate to her for one half of the jointly held stock, gave her good title to the stock which she transferred to the company two days later.

The Government also relies on Section 115(g) of the Internal Revenue Act of 1939 which reads as follows:

"(g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend." 26 U.S.C.1945 ed., § 115.

Since all of Mrs. Summerfield's shares in the Summerfield Chevrolet Company were redeemed, thereby relinquishing her entire interest in the company, the following regulation promulgated by the Commissioner of Internal Revenue would appear to be applicable:

"*Distributions in redemption or cancellation of stock taxable as a dividend. * * * The question whether a distribution in connection* with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock *pro rata* among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution. * * * *On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. * * *"* (Emphasis supplied.) Section 29.-115–9, Regulations 111 issued by Treasury Department.[1]

In the recent case of Zenz v. Quinlivan, 6 Cir., 1954, 213 F.2d 914, 915, the Court of Appeals for this circuit stated the question before it as follows:

"Is a distribution of substantially all of the accumulated earnings and surplus of a corporation, which are not necessary to the conduct of the business of the corporation, *in redemption of all outstanding shares of stock of said corporation owned by one person* essentially equivalent to the distribution of a taxable dividend under the Internal Revenue Code?" (Emphasis supplied.)

The Court held that the termination of the entire interest of a shareholder is to be taxed as long term capital gain. The Court stated:

"We cannot concur with the legal proposition enunciated by the District Court that a corporate distribution can be essentially equivalent to a taxable dividend even though that distribution extinguishes the shareholder's interest in the corporation.

"However, where such shareholder is closely related to remaining shareholders, that factor will be considered along with all other circumstances of the case in determining whether the distribution is essentially equivalent to a dividend."

---

1. It is of some significance that the Commissioner proposed (16 Federal Register 10312, October 9, 1951) but did not adopt an amendment which would have added the following to Section 29.-115–9, Regulation 111:

To the contrary, *we are satisfied that where the taxpayer effects a redemption which completely extinguishes the taxpayer's interest in the corporation, and does not retain any beneficial interest whatever, that such transaction is not the equivalent of the distribution of a taxable dividend as to him.* Tiffany v. Commissioner of Internal Revenue, 16 T.C. 1443." 213 F.2d at page 917. (Emphasis supplied.)

"Since the intent of the taxpayer was to bring about a complete liquidation of her holdings and to become separated from all interest in the corporation, *the conclusion is inevitable* that the distribution of the earnings and profits by the corporation in payment·for said stock was not made at such time and in such manner as to make the distribution and cancellation or redemption thereof essentially equivalent to the distribution of a taxable dividend.

"In view of the fact that the application of *Section 115(g) of the Internal Revenue Code contemplates that the shareholder receiving the distribution will remain in the corporation,* the circumstances of this proceeding militate against treating taxpayer's sale as a distribution of a taxable dividend." 213 F.2d at page 917. (Emphasis supplied.)

Accordingly, but for the Government's contention that the sale was not genuine because the price paid Mrs. Summerfield was inadequate, I would let the matter rest at this point. The Government concedes that if the sale were genuine, and Mrs. Summerfield was, as I have found, the real owner of 50% of the stock of the company on the date of the transaction, the plaintiffs would be entitled to recover on their complaint.

I am not unmindful of the substantial earnings of the company which after taxes were as follows: $155,500 in the year 1946; $295,300 in the year 1947; $376,300 in the year 1948; $483,900 in the year ,1949 and $472,100 in the year 1950. Nor am I unaware that the company's assets which consisted of land, buildings, equipment, accounts receivable, cash, United States Treasury Bonds and inventories were worth at least their book costs. It may very well be that taking into consideration the earnings of the company and the value of its assets, the price paid to Mrs. Summerfield for a 50% interest in the company was not adequate in the sense that a higher price might have been demanded and received by an owner who did not have the same relation to Mr. Summerfield that Mrs. Summerfield did.

Such inadequacy in price might possibly indicate that Mrs. Summerfield made a gift when she permitted her stock to be redeemed at the price that she did. This, however, would not affect the income tax consequences of the redemption of her stock unless the price paid was so grossly inadequate as to indicate that the alleged sale was not a sale at all. I cannot say that the payment of $440,000 to Mrs. Summerfield, which resulted in the complete elimination of her interest in the company, did not constitute a bona fide sale by her to the company.

Albeit true that the stock redemption may have effected tax savings, that does not justify its taxation at ordinary rates. Said Judge Miller for the Court:

"The general principle is well settled that a taxpayer has the legal right to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits [citations omitted] and that the taxpayer's motive to avoid taxation will not establish liability if the transaction does not do so without it. [Citations omitted.]" Chamberlin v. Commissioner of Internal Revenue, 6 Cir., 1953, 207 F. 2d 462, 468.

For the reasons set out here, judgment is this day being entered for the plaintiffs.